UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL CHILDS, Jr., CDCR #F-14068,<br><br>                              Plaintiff,<br><br>vs.<br><br>MATTHEW CATE, Director/Secretary; PARAMO, Warden; HERNANDEZ, Assoc. Warden; BENYARD, Correctional Captain; WALKER, Medical Doctor; J. PAYNE, Correctional Sergeant; J. REYES, Correctional Officer; J. CHUA, Doctor; STATE OF CALIFORNIA,<br><br>                              Defendants. | Civil No.   13cv2633 CAB (PCL)<br><br>**ORDER:**<br><br>**(1)  GRANTING PLAINTIFF'S MOTION TO PROCEED** *IN FORMA PAUPERIS* **[ECF Doc. No. 2]**<br><br>**(2)  SUA SPONTE DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)**<br><br>**AND**<br><br>**(3)  GRANTING PLAINTIFF'S MOTION TO AMEND [ECF Doc. No. 5]** |

Earl Child, Jr., ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, has initiated a civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff claims Defendants, most of whom are RJD correctional and medical officials, subjected him to cruel and unusual punishment and violated his right to due

process in September and October 2013. *See* Compl. (ECF Doc. No. 1) at 1, 4-6. Specifically, Plaintiff contends that on September 30, 2013, he was placed in Administrative Segregation ("Ad-Seg") based on "false" confidential information provided by a fellow inmate. *Id.* at 5. Plaintiff claims to have had his "medical care appliances," confiscated prior to placement in Ad-Seg, to have had "all privileges" suspended during his time there, and to have been denied due process based on an October 3, 2013 classification committee's decision to retain him in Ad-Seg until transfer to another facility. *Id.* at 5, 6. Plaintiff seeks general and punitive damages, as well as "emergency injunctive relief" requiring the return of his medical appliances and his "legal work & property," as well as court-ordered access to the law library and immediate release from Ad-Seg to RJD's 'C' yard. *See* Suppl. to Compl. (ECF Doc. No. 3) at 3-5.

Plaintiff has not prepaid the civil filing fee; instead he has filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF Doc. No. 2). In addition, Plaintiff has filed a Motion seeking leave to "amend for the first time." (ECF Doc. No. 5).

**I.   PLAINTIFF'S MOTION TO PROCEED IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee. *See* 28 U.S.C. § 1914(a).[1] An action may proceed despite the plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, if the plaintiff is a prisoner and is granted leave to proceed IFP, he nevertheless remains obligated to pay the entire fee in installments, regardless of whether his action is ultimately dismissed. ///

---

[1] In addition to the $350 statutory fee, all parties filing civil actions *on or after May 1, 2013*, must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a), (b); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule (eff. May 1, 2013). However, the additional $50 administrative fee is waived if the plaintiff is granted leave to proceed IFP. *Id.*

*See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Under 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act ("PLRA"), a prisoner seeking leave to proceed IFP must also submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the six-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court must assess an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner must collect subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forward those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

In support of his IFP application, Plaintiff has submitted the certified copies of his trust account statements required by 28 U.S.C. § 1915(a)(2) and S.D. CAL. CIVLR 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Plaintiff's trust account statements, as well as the attached prison certificate issued by a trust account official at RJD where he is currently incarcerated verifying his account history and available balances. Plaintiff's statements show an average monthly balance of $37.50, average monthly deposits of $25.00, and an available balance of $19.83 at the time of filing. Based on this financial information, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF Doc. No. 2) and assesses an initial partial filing fee of $7.50 pursuant to 28 U.S.C. § 1915(b)(1).

However, the Secretary of the California Department of Corrections and Rehabilitation, or his designee, shall collect this initial fee only if sufficient funds in Plaintiff's account are available at the time this Order is executed pursuant to the directions set forth below. See 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event

shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total owed in this case shall be collected and forwarded to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II. INITIAL SCREENING PER 28 U.S.C. §§ 1915(e)(2)(b)(ii) AND 1915A(b)(1)

### A. Standard of Review

Notwithstanding IFP status or the payment of any partial filing fees, the PLRA also obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing." See 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these provisions of the PLRA, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

However, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not, in so doing, "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*

**B.    42 U.S.C. § 1983**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

/ / /

### C. Improper Defendants

#### i. State of California

As an initial matter, the Court finds that to the extent Plaintiff names the State of California as a Defendant in the caption of his Complaint, any claims he may wish to pursue must be dismissed sua sponte pursuant to both 28 U.S.C. § 1915(e)(2) and § 1915A(b) for both failing to state a claim and for seeking damages against a defendant who is immune. The State of California is not a "person" subject to suit under § 1983. *Hale v. State of Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (holding that the State and its Department of Corrections, which is an arm of the State, are not "persons" within the meaning of § 1983); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) ("There can be no doubt . . . that [a] suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit.").

Therefore, to the extent Plaintiff seeks to sue the State of California pursuant to 42 U.S.C. § 1983, his Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii) and 28 U.S.C. § 1915A(b)(1) & (2).

#### ii. Respondeat Superior

Plaintiff also names Matthew Cate, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and D. Paramo, the Warden of RJD as Defendants. *See* Compl. at 1-2. However, his Complaint contains virtually no allegations that either of these individuals knew of or took any part in any constitutional violation. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

///

First, Plaintiff includes Secretary Cate and Warden Paramo as parties because they are "responsible for the overall care of all California State Prisons" and "all prisoners at RJD[]" respectively. *See* Compl. at 2. Plaintiff includes no further details as to what Cate or Paramo specifically did, or failed to do, which resulted in the violation of any constitutional right. *Iqbal*, 556 U.S. at 678 (noting that FED.R.CIV.P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 555, 570).

Thus, to the extent it appears Plaintiff seeks to sue Secretary Cate and Warden Paramo only by virtue of their positions within the prison and/or their supervisory duties over other correctional or medical officials, in order to avoid the respondeat superior bar, his pleading must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and include a description of personal acts by each individual defendant which show a direct causal connection to a violation of specific constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and with deliberate indifference, failed to act to prevent them. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Taylor*, 880 F.2d at 1045. If there is no affirmative link between a defendant's conduct and the alleged injury, as there is none alleged here, there is no deprivation of the plaintiff's constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 370 (1976).

As currently pleaded, Plaintiff's Complaint sets forth no facts which might be liberally construed to support any sort of individualized constitutional claim against Secretary Cate or Warden Paramo, both of whom are purportedly being sued based on the positions they hold and not because of any individually identifiable conduct alleged to have caused Plaintiff injury. "Causation is, of course, a required element of a § 1983

claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo*, 423 U.S. at 370-71).

Based on these pleading deficiencies, the Court finds Plaintiff has failed to state a claim against either Cate or Paramo and his Complaint requires dismissal as to both these parties pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Lopez*, 203 F.3d at 1126-27; *Resnick*, 213 F.3d at 446.

### D.     Cruel and Unusual Punishment Claims

Plaintiff alleges his "right to medical care/treatment" and the Eighth Amendment's prohibition on cruel and unusual punishment were violated when Defendant Payne confiscated his medical appliances prior to placing him in Ad-Seg on September 30, 2013. Compl. at 4. Plaintiff alleges to have complained to various "counselors, nurses, [and] mental health Doctor Solarno, Soto, and [] Parker," and was "seen by a nurse" named McFarthor (none of whom is named as a Defendant), who told him to make a request. Plaintiff alleges he did so on October 6, 7 and 8, 2013, and on October 9, 2013, was seen by "Dr. Mrs. Ch[au]" who "gave him two copies of [his] appliance chronos," and told him to "file a complaint." *Id.*

As to Plaintiff's medical care, only "deliberate indifference to a [his] serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). First, Plaintiff must allege a "serious medical need" by demonstrating that "failure to treat [his] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (citing *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's

daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-60.

Here, Plaintiff identifies himself as a participant in the "mental health (EOP) unit," and contends he has medical "chronos" permitting his use of a "vision vest," sunglasses, contact lens & cleaner, [and] orthopedic soft . . . shoes," *see* Compl. at 4, but his Complaint contains no further factual content describing the nature of his physical of mental condition or disability, or how the temporary denial of his medical appliances while in Ad-Seg affected his daily activities, "result[ed] in further significant injury," or caused an "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059; *see also Iqbal*, 556 U.S. at 678.

Second, even if Plaintiff had alleged a medical need that was sufficiently objectively serious, he must also include in his Complaint enough factual content to show that any of the individuals he has identified as Defendants were "deliberately indifferent" to his needs. *McGuckin*, 974 F.2d at 1060; *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Deliberate indifference" is evidenced only when a prisoner can show that the official he seeks to hold liable "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Specifically, Plaintiff must allege "factual content," *Iqbal*, 556 U.S. at 678, which demonstrates "(a) a purposeful act or failure to respond to [his] pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

"Deliberate indifference is a high legal standard," and claims of medical malpractice or negligence are insufficient to establish a constitutional deprivation.

*Simmons v. Navajo County*, 609 F.3d 1011, 1019 (9th Cir. 2010) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)).

As currently pleaded, Plaintiff claims only that Defendant Payne denied him access to medical appliances that were previously authorized by Dr. Chau when he placed Plaintiff in Ad-Seg on September 30, 2013, "knowing" that Plaintiff could be injured. *See* Compl. at 4. Plaintiff concludes that this denial amounted to "cruel and unusual punishment." *Id.* However, Plaintiff offers no further facts from which the Court might plausibly infer that Payne, or any other named Defendant deliberately chose to disregard a substantial or obvious risk to his health or safety. *See Farmer*, 511 U.S. at 837. Nor does Plaintiff allege that he was ever *actually* injured as a result. *Resnick*, 213 F.3d at 449 ("In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury.") (citation omitted).

Thus, without more, the Court finds that Plaintiff's claims related to the denial of his medical appliances contain only the "[t]hreadbare recitals of the elements of a[n Eighth Amendment] cause of action," are "supported by mere conclusory statements," and therefore, "do not suffice" to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Lopez*, 203 F.3d at 1126-27; *Resnick*, 213 F.3d at 446.

**E.     Due Process**

Plaintiff also claims his "due process rights" were denied because he was "placed in Ad-Seg (hole) for no reason," on September 30, 2013, and remained "locked up" as of October 30, 2013, the date of the filing of his Complaint, "due to some confidential inmate [who] made a false statement against [him]." *See* Compl. at 5. Plaintiff contends that unspecified Defendants failed to "investigate t[he] matter," and that as a result, he has had to "sit in the dungeon" without privileges "pending [a] transfer" which "could take up to 120 days or more." *Id.*

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled. *Wilkinson v. Austin*, 545 U.S.

209, 221 (2005). To state a due process claim, Plaintiff must first identify the interest at stake. *Id.* at 221. Liberty interests may arise from the Due Process Clause itself or from state law. *Id.*

The Due Process Clause by itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. *Id.* at 221-23 (citing *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes "atypical and significant hardship" on the inmate "in relation to the ordinary incidents of prison life." *Id.* at 221 (citing *Sandin*, 515 U.S. at 484); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

In this case, Plaintiff has failed to establish a liberty interest protected by the Constitution because he has not alleged, as he must under *Sandin*, sufficient facts related to the conditions in Ad-Seg which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." 515 U.S. at 486. For example, in *Sandin*, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption in his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. *Id.* at 486-87.

Therefore, to allege a due process violation, Plaintiff's Complaint must contain sufficient "factual content that allows the court to draw the reasonable inference" that his 30-day stay in Ad-Seg imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Iqbal*, 556 U.S. at 678; *Sandin*, 515 U.S. at 483-84. Plaintiff's Complaint, however, fails to include any "further factual enhancement"

which might suggest any major disruption in his environment, any comparison to the conditions of his previous confinement in the general population, or any mention whatsoever as to its potential effect on the length of his sentence. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Sandin*, 515 U.S. at 486-87. Plaintiff must offer more that "naked assertions devoid of further factual enhancement" in order to state a due process claim; and instead must include "sufficient factual matter," *id.,* which demonstrates "a dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest before he can claim a violation of due process. *Sandin*, 515 U.S. at 485; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). This he has failed to do; therefore the Court finds that Plaintiff has failed to allege a liberty interest in remaining free of Ad-Seg, and thus, has failed to state a due process claim. *See May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement); *Toussaint v. McCarthy*, 801 F.2d 1080, 1091 (9th Cir.1985) (finding that administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration), *abrogated in part on other grounds by Sandin*, 515 U.S. 472; *see also Myron*, 476 F.3d at 718 (finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison).

Indeed, in *Sandin* itself, the Supreme Court held that placing an inmate in administrative segregation for thirty days, the same amount of time Plaintiff alleges he spent in Ad-Seg at the time his Complaint was filed in this case, "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." 515 U.S. at 486.

Accordingly, the Court finds Plaintiff's Complaint also fails to state a due process claim as to any named Defendant upon which relief can be granted. *See Lopez*, 203 F.3d at 1126-27; *Resnick*, 213 F.3d at 446.

### III. PLAINTIFF'S MOTION TO AMEND

Plaintiff has also filed a Motion "to amend for the first time" in which he asks the Court to "let [him] know what he needs to do to amend his case." *See* ECF Doc. No. 5 at 1.

Because Plaintiff is proceeding *in pro se*, and he has been provided with "notice of the deficiencies in his complaint," the Court will also GRANT his Motion and provide him with an opportunity to "effectively" amend. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).[2]

### IV. CONCLUSION AND ORDER

Good cause appearing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF Doc. No. 2) is GRANTED.

2. The Secretary of the California Department of Corrections and Rehabilitation, or his designee, shall collect the $7.50 initial filing fee assessed by this Order from Plaintiff's prison trust account, and shall forward the remaining $342.50 balance of the full fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and shall forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

///

---

[2] Finally, the Court notes that while Plaintiff need not allege in his Complaint that he has exhausted all administrative remedies as are available pursuant to 42 U.S.C. § 1997e(a), *see Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding that the "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."), it appears from the face of his pleading that his purported Eighth and Fourteenth Amendment may *not* have been fully exhausted prior to the initiation of this suit. *See* Compl. at 7 (noting that Plaintiff "tried to exhaust, and will continue to do so.") Plaintiff is hereby advised that "[t]he available remed[y] must be 'exhausted' *before* a complaint under § 1983 may be entertained." *McKinney v. Carey*, 311 F.3d 1198, 1199 (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001) (emphasis added)). "Exhaustion subsequent to the filing of suit will not suffice." *Id.*

3. The Clerk of the Court is directed to serve a copy of this Order on Jeffrey A. Beard, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

**IT IS FURTHER ORDERED** that:

4. Plaintiff's Complaint is DISMISSED without prejudice for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b); and

5. Plaintiff's Motion to Amend (ECF Doc. No. 5) is GRANTED. Plaintiff shall have forty-five (45) days leave from the date this Order is entered into the Court's docket in which to file a First Amended Complaint which cures all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived.").

If Plaintiff fails to file an Amended Complaint within the time provided, this civil action shall remain dismissed without prejudice and without further Order of the Court based on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

DATED: March 6, 2014

_____
**CATHY ANN BENCIVENGO**
United States District Judge